Samuel **COLEMAN**, Plaintiff,

v.

Richard **BALLENTINE**, et al., Defendants.

No. 82 C 4460.

United States District Court, N.D. Illinois, E.D.

Jan. 13, 1983.

Steven Ackerman and Abraham N. Goldman, Chicago, Ill., for plaintiff.

Aldus S. Mitchell, Cook, Mitchell & Black, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Samuel Coleman ("Coleman") has sued the Village of Robbins ("Robbins"), three

Robbins officials and Cook County Deputy Sheriff Al Fiorenzo ("Fiorenzo") under 42 U.S.C. § 1983 ("Section 1983").[1] Coleman alleges various violations of his constitutional rights in connection with his termination as a Robbins Special Investigator. Robbins and its three officials (solely for convenience termed "defendants," even though Fiorenzo has not joined in the motion) have moved to dismiss. For the reasons stated in this memorandum opinion and order, defendants' motion is granted in part and denied in part.

### Facts[2]

Coleman became a Robbins police officer in 1948 and served for many years thereafter. Beginning sometime in 1970 and until December 1, 1977 he was employed on a part-time basis for special police projects. Throughout the entire period Coleman had the duties and powers of a sworn police officer.

On December 1, 1977 Robbins' Board of Trustees (the "Board") appointed Coleman Special Investigator to probe for corruption in the Robbins police force. Coleman found evidence of widespread police corruption and implications of the involvement of Robbins Mayor Marion Smith ("Smith"). In April 1978 Coleman reported his findings to the Board and to the Cook County State's Attorney.

In an effort to suppress the investigation, Smith fired Coleman and abolished the Robbins police force, calling on the Cook County Sheriff's police to patrol Robbins. Smith acted without Board approval or authority.

Despite Smith's actions Coleman continued to perform his duties. In November 1978 the Board renewed Coleman's appointment, but Smith unlawfully refused to sign

---

**1.** Complaint ¶¶ 30–33 stated pendent state law claims against four of the defendants. Defendants' Mem. 1–3 argued those claims were barred either by applicable Illinois statutes of limitations or by Coleman's failure to meet applicable Illinois notice requirements. Because Coleman's Ans.Mem. 5 concedes the state law claims "may be improvidently brought" and requests their dismissal, that will be done. See Fed.R.Civ.P. ("Rule") 41(a)(1).

**2.** As usual on a motion to dismiss, the Complaint's well-pleaded allegations are taken as true. *Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977). It is possible for a complaint to be "well-pleaded" in the technical sense despite some degree of opacity, as is the case here. It should also be understood that no findings of fact are implied from this recital, drawn as it is from the Complaint.

the renewal ordinance or the official permit identifying Coleman as a police officer and authorizing him to carry a weapon. At about that time Smith and unknown Robbins Trustees began destroying documents relating to Coleman's appointment and activities as Special Investigator.

Sometime in 1979 Robbins police officers who had been discharged by Smith were reinstated with back pay, but Coleman has repeatedly been refused back pay. Coleman continued his activities as Special Investigator through spring 1979.

On April 3, 1979 Coleman responded to a local businessman's report that Robbins Chief of Police Gordon Frierson ("Frierson") had attempted to obtain free services for Robbins police officers. Coleman investigated the matter and reported to the Board, which reprimanded Frierson. Before becoming Robbins police chief, Frierson had been the Cook County Sheriff's Deputy charged with patrolling Robbins in place of the disbanded Robbins police force.

Smith, Frierson and Fiorenzo and unknown others then conspired to harass and discredit Coleman. Pursuant to that conspiracy, on June 22, 1979 Fiorenzo arrested Coleman in his home without a warrant and caused him to be charged with wrongfully impersonating a police officer. In July 1979 a Cook County Circuit Court judge dismissed the charges against Coleman.

### Coleman's Section 1983 Claims

True, Coleman's Complaint is none too clear in setting forth his Section 1983 contentions.[3] Nevertheless claims along these lines can be inferred:

1. Smith terminated Coleman's employment as Special Investigator in retaliation for Coleman's exercise of his First Amendment[4] right to report to the proper authorities the illegal activities he had discovered.

2. Frierson retaliated against Coleman for reporting Frierson's improprieties, by conspiring with Smith and Fiorenzo to arrest Coleman unlawfully.

3. Fiorenzo unlawfully arrested Coleman pursuant to that conspiracy with Smith and Frierson.

4. Smith and Frierson acted in accordance with Robbins policy and customs.

5. Robbins, Smith and Robbins Mayor Richard Ballentine[5] denied Coleman's due process rights by failing to provide him with a hearing either before termination or in connection with his repeated requests for reinstatement and back pay.

Coleman asks $1 million in compensatory and $1 million in punitive damages, plus an award of attorneys' fees. Joint and several liability is asserted against Robbins and the individual defendants.

### 1. Retaliatory Termination

Coleman says Smith fired him in retaliation for his investigation into and his reporting of corruption in Robbins' police force and in Smith's own office. That asserts:

(1) loss of a position to which Coleman was legally appointed,[6] not merely the

---

3. Defendants' Mem. 1 and 3–4 argues the Complaint is radically deficient even by the liberal pleading standards of Rule 8(a)(2). Coleman has set forth the alleged facts, though, and it is enough at this point that the allegations do allow the Court to determine whether Coleman could recover under Section 1983. *See Mathers Fund*, 564 F.2d at 783.

4. As is the general custom, this opinion will refer directly to the underlying Bill of Rights provisions rather than (more accurately) to the Fourteenth Amendment, which incorporates those provisions as protections against state action.

5. Ballentine apparently succeeded Smith as Mayor, for he first appears in Complaint ¶ 37, where he is alleged to have refused to grant Coleman reinstatement, back pay, a gun permit or a hearing. Those allegations precede the general claim in Complaint ¶¶ 38–39 that Smith's, Frierson's and Ballentine's acts constituted Robbins policy. Complaint ¶ 44's allegations about Ballentine's hand in refusing Coleman a hearing on his grievances appear to subsume the allegations in Complaint ¶ 37.

6. Complaint ¶ 10 alleges Coleman was appointed Special Investigator by the Board. For purposes of a retaliatory termination claim, it is irrelevant whether Coleman was technically a

loss of reputation; *cf. Paul v. Davis,* 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1164–66, 47 L.Ed.2d 405 (1976) (holding defamation by a state official, standing alone, does not rise to the level of a constitutional deprivation under Section 1983); and

(2) loss of that position in violation of Coleman's First Amendment right to report the improprieties of public officials.[7]

Even if Coleman's termination might not have implicated federal rights if ordered for another reason,[8] those allegations state an actionable Section 1983 claim against Smith. *See Benson v. Allphin,* 544 F.Supp. 464, 467 (N.D.Ill.1982).

## 2. *Conspiracy and Retaliatory Unlawful Arrest*

■■■ "Conspiracy" alone does not trigger Section 1983 liability. As *Goldschmidt v. Patchett,* 686 F.2d 582, 585 (7th Cir.1982) recently put it:

Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises.

But here Coleman *has* alleged actual unlawful arrest pursuant to a conspiracy among Smith, Frierson and Fiorenzo.[9] That involves infringement of Fourth Amendment rights and thereby states a Section 1983 claim. *See Zurek v. Woodbury,* 446 F.Supp. 1149, 1151 (N.D.Ill.1978), *citing Joseph v. Rowlen,* 402 F.2d 367 (7th Cir.1968). Moreover, the earlier analysis suggests Frierson's retaliation for Coleman's report on

him (the latter an exercise of First Amendment rights) is also actionable under Section 1983.

## 3. *Robbins Policy or Custom*

■■■ *Monell v. Department of Social Services,* 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 2036, 2037, 56 L.Ed.2d 611 (1978) teaches a municipality can be liable for unconstitutional actions of its employees that implement an official custom or policy. Complaint ¶¶ 38–39 recite the magic words, and this Court might ordinarily regard them as sufficient to tar Robbins with the brush of Smith's and Frierson's retaliatory actions. *See Thompson v. Village of Evergreen Park,* 503 F.Supp. 251, 252 (N.D.Ill. 1980).

Here, however, the formula recital is specifically negated by Complaint ¶¶ 14, 16–17 and 21, which dissociate Smith's and Frierson's actions from those of the Board.[10] Accordingly the Complaint fails to state a Section 1983 claim against Robbins for Smith's and Frierson's retaliatory actions, the termination or the unlawful arrest.

## 4. *Due Process Hearings*

■■■ Complaint ¶¶ 42–44 claim Robbins, Smith and Ballentine violated Coleman's rights to a hearing before his termination and in connection with his quest for reinstatement. That claim against Robbins does not have to charge a municipal policy, for it depends on a direct due process viola-

Robbins police officer at the time of the alleged termination. Defendants' Mem. 5 and R.Mem. [1–2] are in error in implying otherwise.

7. *Mount Healthy Board of Education v. Doyle,* 429 U.S. 274, 282–84, 97 S.Ct. 568, 573–575, 50 L.Ed.2d 471 (1977) held the First Amendment protected communication of criticism of public officials to a radio station. Coleman's alleged reporting here, which directly called public officials to account for their improprieties, is even closer to the core of the First Amendment. *See also McClure v. Cywinski,* 686 F.2d 541, 544–45 (7th Cir.1982) (discussing burden of proof under *Mount Healthy*).

8. Contrary to Def.R.Mem. [1–2], it is irrelevant that Illinois courts would not inquire into the motives for the abolition of Robbins' police force. *See Woolfolk v. Board of Fire and Po-*

*lice Commissioners of the Village of Robbins,* 79 Ill.App.3d 27, 32, 34 Ill.Dec. 551, 555, 398 N.E.2d 226, 230 (1st Dist.1979). Section 1983 claims may exist even where there is no state law tort or wrongful conduct. *See Beard v. Robinson,* 563 F.2d 331, 337 (7th Cir.1977), *cert. denied* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978), *quoting Smith v. Cremins,* 308 F.2d 187, 190 (9th Cir.1962).

9. Defendants' Mem. 4–5 and R.Mem. [3] discuss the conspiracy allegations only in terms of their supposed lack of sufficient factual detail.

10. That deficiency makes it unnecessary to decide whether one incident, the unlawful arrest by Frierson (Complaint ¶¶ 29, 36), can suffice to state a municipal policy or custom.

tion by Robbins. Nevertheless the claim fails not only against Robbins but against Smith and Ballentine as well.

Under *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) state law determines whether a person has a cognizable "property" interest in public employment. Coleman does not allege the state law source of his authority as Special Investigator or any state law protection of his employment in that position. *See* Def. R.Mem. [3–5]. In fact, Complaint ¶¶ 8–10 suggest Coleman had an ad hoc appointment by the Board after December 1, 1977, without any guaranty of continued employment and without any restriction on his removal. Clearly Coleman's allegations do not meet the pleading requirements implicit in *Bishop.*[11]

It follows *a fortiori* Coleman has not alleged facts showing any cognizable right to a hearing on his request for reinstatement and on his other grievances. And because all the allegations (Complaint ¶¶ 37, 44) as to Ballentine's acts are bound up in Coleman's quest for reinstatement, the Complaint fails to state any actionable claim against Ballentine at all.

### Conclusion

Defendants' motion to dismiss is granted as to all claims against Robbins and Ballentine. Both state claims (the Complaint's Second and Third Claims) are also dismissed.

Defendants' motion is denied as to claims (1) against Smith for retaliatory termination and unlawful arrest and (2) against Frierson for unlawful arrest. Coleman's claims against Fiorenzo for unlawful arrest have not been challenged here and also stand. Defendants are ordered to answer those remaining claims on or before January 27, 1983.

11. Coleman's attempt to "fill in" the facts in his Ans.Mem. 1, 4 does not rescue his Complaint in this respect, for the Complaint itself must state a cognizable claim. *See Hill v. Trustees of Indiana University,* 537 F.2d 248,

251 (7th Cir.1976). True enough, inferences are to be drawn in favor of the Complaint, but they must be based on pleaded facts—and those are missing.